Good morning. I'm Shannon Holtzman, and along with my partner, Carol Reisman, we represent the appellant, Luv N' Care, Limited. May it please the Court. The District Court in this case committed three fundamental errors in granting summary judgment to Luv N' Care. At first, the District Court misconstrued the contract and Louisiana law by imposing a protectable interest requirement, which is not required under Louisiana law. Second, the District Court misconstrued both the contract and Louisiana law by holding that the contract and the law only protect confidential information if information is, in fact, confidential to one of the parties. And third, the Court overlooked express terms in the contract and failed to apply a bedrock principle of Louisiana law, which supports freedom of contract. So I'll go to my first error regarding a protectable interest. Under Louisiana law, a contract requires four basic elements. You have to have consent of the parties freely given. You have to have capacity to contract. You have to have a lawful cause, which is the Louisiana version, sort of, of consideration. And you have to have an object that is lawful, possible, determined, or determinable. There is no requirement of a protectable interest, not to the contract as a whole, and certainly not as to one particular clause, which is what the Court imposed as a requirement in this case. I'll give you an easy example. A form selection clause, which the parties have had in this case, prior to executing a contract with a form selection clause, neither party can claim that they had a protectable interest in a particular form. But after you sign your contract with your form selection clause, then the parties do have a protectable interest by virtue of the contract itself, and that's what happened here. Another example, in the Barrera v. Cialino case that we cited several times in our brief, the Louisiana Supreme Court was dealing with a contract that sold a business, and the business's good name, I'm sorry, goodwill, but only conveyed the use of the business name for six months. And the buyer filed suit and said, this can't be enforceable. And the Louisiana Supreme Court said, no, yes, it can. Just because the sale of goodwill would ordinarily include use of the business name for forever, this contract restricted it to six months, and that's enforceable because the parties have freedom of contract in Louisiana. In that case, there was no problem by the fact that the business name was in the public realm. In fact, it was in the public realm, and that's what made it valuable in that particular case. And so that's why the court said, you can contract in the way that you want to. Before the original contract between these two parties, was Suavenex already selling these sippy cups and pacifiers and whatever that are the currently contested ones, in other words, these exact same products, were they already being sold by Suavenex? Yes, under a series of agreements. I mean, before there ever was an agreement with Love and Care, okay? So the two companies never heard of each other. Was Suavenex selling these same products at that point? No, Your Honor. Okay. So that's why I don't understand. Everybody acts like reverse engineering is some easy thing to do, but if I had to figure out how to make this pen with no help, it would take me a while. And so did Suavenex get the benefit of learning how to make the Love and Care products by having essentially the blueprint, rather than having to reverse engineer? Exactly. And does that, even though the things in the public, to me this idea that reverse engineering is easy is foreign to me, because I mean, I had a lot of these kind of trade secrets cases and whatever, and the knowledge of how to do it without having to go through the process of the reverse engineering is worth something, isn't it? That's exactly right. Why has no one made that argument? When they come to the table, when they get the benefit of all of Love and Care's research and development to come up with the product to begin with, they also get the benefit of our sales formulas, the way that we promote the product, et cetera. All the support for the product that is provided pursuant to the agreement, they get the benefit of. But that's what you're seeking to protect here? Because I mean, no one really took this on, this reverse engineering thing, but that was what occurred to me, was that I couldn't go reverse engineer the space shuttle, even if they gave it to me. So, and I realize this is a little bit easier product than that, but still, I mean, I guess I'm not understanding why that argument wasn't made or why that isn't part of the analysis here. Or maybe it is and it just seems obvious to everyone. I don't know. I think it is part of the analysis, but it's more than just the contract protects the product design and says, we, basically, if you're going to be our distributor and you're going to get the benefit of our product and our good name and our research and development costs that went into making this product, we're not, we don't want you to be selling our product in Spain, the only distributor in the entire country. And then once you get to a certain spot in the business, once you get known, et cetera, then you say, oh, I'm going to copy your product and I'm not going to be a distributor anymore. That's what we're protecting. Regardless of how they, how they get the information to copy the product, it's, the contract says you can't copy any of Love and Care's product design. You can't copy any of it. You can't copy any of it, of our information. But the problem we have here is the judge's determination was, but it sounds like everyone else could, because it's in the public domain. So everyone else could copy it, except here you have a contract which says Suave Next can't. That's exactly right, Your Honor. And that's the whole purpose of the contract. And you're saying, and you're saying that this agreement provides for a protectable interest, so you're not quarreling with a protectable interest. I am quarreling with it, actually. But I'm saying that, I'm saying two things. One, you don't have to have a protectable interest before a contract is entered into. But the effect of a contract, after it's entered into, is that you can protect what's covered in that contract. All right. Because I thought here the district court determined that the protectable interest had to be one that you could copyright or patent or something like, something that was not in the public domain. That is what the court— That's the only way it could be a protectable interest is if it's not in the public domain. That is what the district court held, and that was in error, because that is not— So you're saying it's a definition of protectable interest is what's wrong. You're saying you had a protectable interest, just not as—but the one as defined by the district court. Correct. So the district court did a couple of different things. First, it said, it looked at the word proprietary, because the word proprietary is in the contract. And it said proprietary is defined as something where you have a protectable interest. And then it looked to patent law concepts and said you can't have a protectable interest unless it's covered by a patent or a copyright. Our argument is that proprietary design under this contract should not be defined as something in which we had a protectable interest under patent law, because that's not what it says. If you look at, for example, I looked at dictionary.com last night. Dictionary.com defines proprietary in like six different ways, including just So it doesn't mean that you have a—that we had to have a protectable interest in our product design. It just means it has to be loving care product design. I read all this stuff, and I could have just gone to dictionary.com. There you go. Oh, all right. There you go. The second fundamental error that the district court made was in holding that Louisiana law only allows for the protection of confidential information if the information is, in fact, confidential to one of the parties. That's a gross misconstruction of Louisiana law. And it's also ignoring some of the terms of the contract, because if you look at paragraph 19, it clearly says that at least for purposes of this contract and for purposes of paragraph 19, either party acknowledges receipt of confidential and non-confidential proprietary information from the other party. So clearly for purposes of this contract, proprietary information includes confidential and non-confidential, i.e., public information. And the sentence following the sentence I just read obligates the distributor not to use in any fashion said confidential or non-confidential proprietary. In the trade secrets cases I had as a lawyer, we always had to have this discussion about, like, you can't protect basic rules of physics. So the fact that I sit down and give you some instructions in basic rules of physics, which would be a short course, I might add, but if I did, then that, the fact that we entered into that in our little confidential relationship doesn't suddenly make those rules of physics something that you can't use in some further job or endeavor. So how do we distinguish between the stuff everybody knows, you know, how to make plastic? I mean, I don't know that everybody knows it, but let's say people in this industry all know how to make plastic, or that sippy cups are something babies need or whatever. So we have all these basic propositions that you would learn in school or that you would learn working anywhere and whatever, and we can't suddenly say Suavenex can't use those. How do we distinguish between non-confidential proprietary information and the everybody knows it kind of physics stuff in this camp that clearly you couldn't restrict because, I mean, you know, how can I sort of unknow things I know? Right. Well, a couple of, hit a couple of different things here. One, we're not claiming it's a trade secret, and so we don't have to comply with any of the rules where you would have to show a trade secret. Two, in Louisiana, under the freedom of contract principles, which are very important and well enforced by Louisiana courts, you can contract for almost anything unless it's illegal. So regardless of what everyone knows, when they contracted not to copy any of Love and Care's product design, when they contracted not to copy Love and Care's products, that's an enforceable agreement. And while it could be a question of fact as to what is Love and Care's product design, this is a summary judgment. It was, there is no evidence that, I'm sorry, let me back up, there's no evidence that shows anything about the party's intent other than they intended, don't copy our, or knock off our product designs. Well, are you going to potentially here win the battle and lose the war? Because, I mean, I looked at those pictures and they're not real helpful to you. I think we will hopefully win the battle and also win the war when we get to, back to district court. How are you going to win when these, I mean, all pacifiers to some degree look alike, all sippy cups to some degree look alike. These didn't look particularly alike. And so how are you going to win that if, even assuming we go your way on this? Sure. Well, for one thing, Love and Care's already won several times on almost the exact same types of arguments. So it can win and it will win. I think based on just a few photographs that may have been in the record for purposes of the appeal, that's not, doesn't give you the full and total picture of the product. And it's not just how they look, but it's how they function. Yes. There we have a special, the sippy cup, for example, works on compression as opposed to having to suck and yet you still have a no spill top. So it's the function, not just what exactly does it look like. I'm running out of time, but to conclude, I would just say that LNC, Love and Care, sells its products to the public. That's its business. It is not in the business of creating products and putting them in the corner and hiding them. It sells its products to the public. So obviously, the only way to interpret the contract to give it meaning, as is required under Civil Code Article 2049, is to include product design for products that are sold to the public. And Suavonex agreed not to copy those product designs. You've reserved some time for a bow. Thank you. May it please the Court. My name is Robert F. Alter, Jr. I'm with the Banner and Wittkoff Law Firm. We represent the appellee in this case, Rupa Ramar, also known as Suavonex. The issue for this Court is whether the district court correctly construed paragraphs 15B and 19 of the party's agreement according to their plain, generally prevailing meaning as applying only to proprietary design or information. I'd like to direct the Court's attention to the language of 15B, which is in the Record on Appeal at page 1106. And it specifically says, and I will quote. Yes, thank you, Your Honor. It says, quote, distributor hereby acknowledges and agrees not to copy or utilize any of LNC's formulae, trade secrets, product design, patents, drawings, business plans, prototypes, packaging, procedures, and methods, and any other proprietary designs or information without LNC's written permission. The crux of the matter before the Court is that Appellant Lovencare is trying to rewrite the party's 2009 agreement into the language of the agreement that was at issue in the Universal Gym Equipment case. The Universal Gym Equipment case, in that case, the language of the agreement that was at issue said that ERWA, and I will quote, shall not thereafter manufacture, use, sell, or distribute any products which include any of the features, designs, technical information, or said know-how of Universal. That's the Universal Gym case, 827 Fed 2nd, 1545. Now, this is important because the sole basis for the alleged breach here is alleged copying of some features of LNC products that were in the public domain, having been publicly available and sold for years before the 2009 agreement was even entered into. Do you agree, though, that your client wasn't selling these particular products that are in question before any deal with Lovencare? Our client had the products under development, Your Honor. But was not actually selling? Was not actually selling the products. The products that are now in dispute, we'll call them the disputed products, were not being sold before the initial contract with Lovencare, the initial relationship with Lovencare? That is correct, Your Honor. And what is your response on the reverse engineering line of discussion I had with your opponent? All right. With regard to the reverse engineering, Your Honor, whatever is out there in the public domain, that's part of what we have for commerce for the public's benefit. They are permitted to go ahead and use those designs. Now, in Lovencare — There's a difference between having to go and reverse engineer and being handed the plans and specifications and here's how we do it, manufacturing process and all that. Your Honor, they were not handed the plans. They were given the commercial product. That was all they were given. They were not given any design plans to manufacture these products. They developed their own manufacturing design plans. The only thing that has been accused in this case is copying certain limited features. They didn't even invent those features. Those features were in the public domain for other people who had invented them also and were present in many, many different pacifier and sippy cup products. Now, as indicated, all right, the Universal Gym case, it's important that they're trying to rewrite it into that language because by reinterpreting 2009 agreement, it's an after-the-fact attempt to obtain rights which L&C never bargained for in order to use the contract. Well, it's really a question of whether the word other wipes out the phrase product design. That's really how you guys have set this up. Well, that's part of it, Your Honor, in that you cannot read the word product design in isolation. You've got the any other proprietary design. Had they intended to cover any designs in that, they would not have put in the words other proprietary as a catch-all at the end. Further, they repeated the same exact thing. Some stuff in here is other proprietary design like trade secrets. Some of it arguably isn't, like the product design, depending on, you know, whether it's in the public domain. So the packaging and procedures and methods, I mean, some of those may, I mean, so I don't, you're reading a lot into the word other. You're saying that, therefore, the phrase proprietary design modifies all other words there because of the use of the word other. We're reading in the words other proprietary, all right? They would not. Had they intended to just cover designs and information, they would have said designs. They wouldn't have said other proprietary designs. Yeah, but, I mean, they said L&C's formula, so it's not just you can't go copy Joe Blow's formula. It's their formula. So why wouldn't we be informed in construing the word proprietary, even assuming it modifies everything, by the phrase L&C's? L&C's. So as opposed to Joe Blow or Pampers or whoever. I don't know who makes sippy cups. Whoever else makes them. Because, Your Honor, it refers to one. It does say proprietary, and it does say it's property in which they have a protectable interest. You can have nonconfidential protectable proprietary interest. In fact, in this very agreement, if you look at the 2009 agreement, Exhibit A sets forth an entire list of trademarks, which are nonconfidential information in which L&C had a proprietary interest. But you couldn't copy a trademark anyway, right, because you've got trademark laws. But the language of the agreement goes to copying and utilizing. And you could, obviously, you could copy it and put it on your product. If it was trademarked, it wouldn't matter whether you had the contract. That's right. Because you have a proprietary interest in it. So what does the contract add to ordinary IP law? What it adds to ordinary IP law is something where they had a protectable interest that was not available to the public. Had they used plain language, as in the Universal Gym case — So a protectable interest not available to the public would then be something that's copyrighted or trademarked, right? It could be copyrighted. It could be trademarked. It could be trade dress. It could be lots of different things. I guess what I'm getting at then is what's the purpose of that clause in the agreement if all it does is protect something that's already protected? That's all it means. It's got to be already protected by copyright or trademark, patent, something like that, or it's not referring to that. Well, it goes like — It only — I guess a better way for me to say it, and I'm trying to prove the question, is that all it's protecting is things that are already protected, right? That's what the parties intended by this, yes, Your Honor. You have to look to the courts. They intended to protect things that are already protected. They intended to protect things in which love and care had a protectable interest, where they would agree — Copyright or trademark, by definition of this, the lower court. It could be any of these things, the formula, the trade secrets. It had to be something in which they had a protectable interest. So what is the purpose of entering into a contract to protect something already protected? Well, the purpose of it is to identify it as to what the parties are in agreement on. It's standard practice in particularly, like I say, confidentiality agreements, all right? If you have something that is confidential, you identify it, all right, as being confidential because you have rights in that, and you deserve protection. You cannot just go out and say, all right, everything out there that I want to say is in the public domain that I want to say is mine is suddenly protectable by contract. Had they intended to protect publicly available — Well, if it's in the public domain, then your argument would be it's not confidential. So I'm still — this is seeming very circular to me in your argument because basically in order to protect something by contract, you already have to have an IP right to just saying we're just adding one more cause of action to our lawsuit that we already would have. And that doesn't seem right to me. Well, you're — If you could consider it a limitation. In other words, it's not enumeration of what you can already do, but it also serves — on the things that the opposing party is protecting. Yes. That you agree that you can't do the things that you can't already do. If every time you acknowledge that, you expanded rights that you didn't have before, no one would ever spell out what their agreement. You'd always be a lot better off, it seems to me, by always including what rights one party already has and making sure that they're now expansive as they can be. Because by accepting what you already have, that means that now it's limitless. You've also given the other party rights they've never had by identifying the rights that they already have. That's exactly the way they're trying to read this agreement, is to identify things which they never had any rights in. They could come back after the fact and say, hey, I now have a product and I'm going to do this in the future, and therefore you can no longer continue to make this particular design. The purpose of this was for the parties to come forward and to identify clearly what they intended to cover. They put it in the catchall at the end to show that they intended it to be proprietary information, not things that were freely available for anyone to use. The district court correctly recognized that. It looked at the language. Are you saying you couldn't enter into a contract with somebody to have them refrain from doing something that the general public could do? No, I'm saying they could have, but they didn't. They could have used language like in the Universal Gym case and very clearly expressed, you are prohibited from making any products which include any of L&C's features. All right? That's what they want. That's what they're trying to make this language read into by reading out the word proprietary before designs and information. And that's not what the parties agreed to. They agreed that it was restricted to proprietary. What's wrong with proprietary is relating back to L&C, meaning ownership. In other words, it's mine rather than Judge Benavidez's or Judge Graves's, so I'm protecting my proprietary interest because I own it. But they don't own it if it's in the public domain. That's what the point is, Your Honor. If they had a protectable interest in it and the district court properly construed the term proprietary, went to Black's dictionary and looked at it for the generally prevailing meaning. I mean, so then if I don't own these pacifiers, then people can just come take them off the shelf at Walmart or whatever and that's not a crime because I didn't own it. That doesn't sound right to me. Of course I own these pacifiers and sippy cups and whatever if I'm the manufacturer of them until I sell them to someone. You're not talking about the pacifier. You're talking about the design of the pacifier, features of the pacifier, features which L&C itself copied off of other people, features that were in the public domain and were incorporated into their pacifiers. But just the fact that it's in the public domain doesn't mean I can't contract with you for you not to do it. If you put that specific language in there, if they had used, all they had to do was to bargain for the language, the universal gym case. That was already a known case besides the 1980s. They could have written a contract which was plain and was understood that that's what was covered. They didn't do that. They wrote a contract which specifically addressed to other proprietary designs. So is this an ambiguous contract that needs to be construed by a jury then? Because it seems like you all are saying it's clearly my way and both of your ways are different. And that doesn't make it ambiguous, but I'm asking does it here? No. As the district court judge properly found, when you read it and you read it in context, not that you read the whole sentence, you don't take one part out of context and just focus in on product design alone. You don't just look at just paragraph 15B. You look also at paragraph 19, which has the same language, which if you look at paragraph 19, it has three different parts. The second part of which they acknowledge the receipt of both confidential and non-confidential proprietary information. And then the third sentence there saying that they would not use said information or designs without reason. But you agree that the two sides disagree on what proprietary means? No, I would not say that, Your Honor. Proprietary means they have to have some rights in it. That's clear. It could be ownership rights if they own it. If something's in the public domain, you don't own it. If it's a feature that you've taken from another person's product and that incorporated into your own, you don't own that, and that's exactly what we're talking about here. Now, is it important that the other product that supposedly is their distributor is selling or manufacturing or distributing? Is it important only that it be a similar product, and in other words, a pacifier, or is it important that that pacifier have a feature or an aspect of it that proprietary information has been used with respect to that feature? In other words, is it just that it's a pacifier, or does that pacifier, that competing pacifier, have to have an aspect from something that is that these people have a proprietary interest, the planning, the design? In other words, just the fact that it's a pacifier, according to their view, that's enough that they just can't sell a pacifier. All right. Your Honor, you look to the words of the agreement. It doesn't say feature. It says product design. All right? So it would be an entire product. So it would be, from your standpoint, that it was another pacifier or that you sucked on it because you suck on all. It has some feature, right? But it would have to have some – they would be correct if in using that pacifier or manufacturing it or selling it or whatever, they used plans that were trade secrets with respect to an aspect of that pacifier. Then you would be in violation of your agreement, right? If you use their secret plans and that, obviously they would. That's not the issue here. All right? And they did – there is no copying, no allegation of copying of the actual product design. All they have alleged is copying features and functions. The only evidence of the record is limited features and functions. As you've seen, if you look at the red brief of pages 33 to 34, there are numerous citations to the record evidence that say that there are multiple differences between the accused products and the products that were allegedly copied. All right? And because of those multiple differences, there was no copying of a product design. Now, in their reply brief, L&C said that this is a new argument raised for the first time. But before you get to that, let me just ask you, if proprietary information cannot be something in the public domain, then what is non-confidential proprietary information? Non-confidential proprietary – I gave you an example that was provided, the list of trademarks. All right? The trademarks that's attached to Exhibit 1 is non-confidential proprietary information. If they had a design pattern, that would have been non-confidential proprietary information. So then we're back to the whole exchange about whether that's already protected. But you don't have anything else. You don't have anything that would fall under non-confidential proprietary information that is not also a trademark, copyright, patent, or similar intellectually property-governed matter. Right. Your Honor, that provision which says non-confidential proprietary information acknowledged the receipt of it. And what they were acknowledging the receipt of was what they were given in Exhibit A, which was the trademarks. All right? It's right there in the record as part of the contract document. That's the acknowledged receipt. Information. Information to me doesn't sound like a trademark. And then it says that you agree not to use in any fashion said information or designs or any colorable imitations thereof. During the term of the agreement. And it does say during the term of the agreement in Paragraph 19. The only thing that Swavonex received was actual commercial product. They didn't receive designs. There's no allegation of copying private secret drawings or any of that type of thing. They didn't give any. They didn't provide any of that. All right? Your Honor, I'm running late on time. I didn't want to hit the alternative guidance for affirmance. As a reasonable jury, if you look at those photographs and that, could not find. You can't look at it. You have to sip on it, basically. And I can't do that with a picture. Well, if you look at what we cite to the record on appeal, on that page 33 and 34, that shows multiple differences. It's not copying a product design. It's limited to features. But if I've learned how to make the sip a little less painful for the toddler, I'm not going to be able to see that from a picture. That's their argument. I don't know if it's right, but that's their argument. Second grounds for affirmance, Your Honor, is that these claims were released. Paragraph 4.1 of the party's termination agreement. We have your argument on that. All right. So in closing, though, Your Honor, the district court read the entire agreement in context, correctly construed the agreement according to its plain meaning, and it meant that it was going to apply to proprietary information. Correctly construed proprietary information. These features were in the public domain. They were not proprietary. They were not protected. Thank you. You have your argument, counsel. You have a red light. Thank you very much. All right. We will hear your rebuttal, counsel. Thank you. Briefly. My opponent contends that, and I think this is a quote, that Levincare, quote, intended to protect things in which Levincare had a protectable interest. That's what he claims our intent was. Well, that intent is nowhere reflected in the terms of the agreement, nor is it reflected in any of the evidence. So is this an ambiguous agreement? We don't think it is, but to the extent that the Court has any question about whether what proprietary non-confidential information is, then it would be a question of fact that should have precluded summary judgment for sure. What are the two reasonable constructions of the disputed? If we were to say it's ambiguous, what would be the two reasonable constructions we would find to remand this on? Honestly, I don't know. I think product design is pretty clear. I think that the obligation not to copy or use any of Levincare's product design is very clear. What might be unclear is whether they, in fact, breached that obligation, but we never even got there because summary judgment. The product design, did you identify that you say was copied or that they used these additional rights that you bargained for in this agreement? Sure. What is it other than it's a pacifier? What specific design or plan or whatever that was used with respect to design? Now you're going to have to bear with me because I'm not a scientist. That's why I went to law school. If it's just a pacifier. It's not. You couldn't have an automobile and say, well, it's got four wheels. Exactly. No, that's exactly right. Now what is it specific to design or copy or whatever particular aspect? That's an excellent question, Your Honor. And there is lots of evidence in the record that Swavonex did copy LNC's unique designs, designs that are unique. Sure. It's a soft silicone pacifier which has soft parts of it to protect the baby or the toddler's mouth. They're supposed to make a hard one. Otherwise, they're in violation. They're supposed to not copy our unique design. Okay. So if they make one that's hard, they're violating it. Are the other products all hard? Are they supposed to be hard? I mean, does it just happen to have something that's desirable and that's used in all these pacifiers? I absolutely agree with you that they can't just we're not taking the position that you can't make a pacifier and sell it. Certainly they can, but they can't create knockoff products, and there's a lot of testimony and expert reports. Since you're not really able to give us a list, or maybe you were giving us a list, but can you tell us where we'd find in the record the specifics that answer Judge Benavidez's question? Sure. Okay. Let's see. Let's see. At 1142 through 1147. Let's see. At 3253, there's testimony about L&C's new distributor getting complaints that the new distributor was selling that were against virtually the same products that were being sold by Suavex. Can you tell us anything else that was the same other than the soft silicone pacifier? I cannot. There's also there's two important innovative functions of the sippy cup top. One is the valve that where the child can drink from the cup by squeezing it instead of having to suck on it, and yet it still is a nose fill top. That's important, apparently. And also it also has a soft and hard components. The Mr. Hakim, one of the owners, testified at length, and it's in the record. Let's see, beginning at pages 32, 42, I believe, that his product design that he invented was copied. That you wouldn't have to have a proprietary interest in that particular design or feature. So that if everyone had the same, if lots of people were using it, and it's in public, whatever, the fact that your product had this feature, it didn't make any difference whether everybody else or nine other competitors had the same feature or even had it before you, then the opposing people can't have a pacifier that contains this feature, even though you don't have a proprietary interest in that particular feature. In other words, if it's similar, you can't sell it, even though I don't own that aspect or that design. I think that's right. If it's a knockoff, you cannot sell it. That's right. So you were selling Chevrolets, and now you can't sell a Pontiac because it's got tires on it, and we have soft tires, or we have Firestone tires on our car. You can't sell a different car that has Firestone because we sell it that way, and it doesn't make any difference that we don't have any proprietary interest in Firestone tires or anything else. You're just out of luck. I think that L&C would say it does have a proprietary interest in its innovative designs, and that's... Well, that's a question. Is it an innovative design? Correct. At a minimum, it's a question of fact and precludes summary judgment. The record may not bear out my concern, but I have a concern that just because you identify what your limits are in the law in a contract, that the fact that you took the time to explain in the contract what your limits are, and you already had them, that means that now you have other things that you didn't have before because you acknowledge the limitations that you have, and that's the problem that I see, and I don't know where I'm at on it, but the problem that I see between the opposing interpretations is that you want to say because they accepted things that are our rights anyway, that now we have rights that we didn't have because they acknowledge what their limitations are. I think that's true in every single contract that's out there. My employment agreement with my law firm, I can't practice law for any other law firm. Before I had the agreement, I would have had that right, but I have agreed to limit that right, and I just want to respond just real quick to his argument about the features. If it was your proprietary interest already, they didn't have that right because that would have been protected under patent or trademark or whatever. I would disagree with you, Your Honor. I don't think that proprietary means it must be protected under patent or trademark, and that's exactly what the Aronson case says. That's exactly what the Naval Air case says, and that's what the Universal Gym case says regarding features. I just want to point the panel to the last highlighted sentence in Paragraph 19, which is where Swavonex agreed not to use in any fashion said information or designs or any colorable limitations thereof. I think we're now repeating. So thank you. Appreciate it. Appreciate all the good arguments we had today. We're going to take a very short 10-minute recess.